490 S.E.2d 23

**Sharon WILLIAMSON, Plaintiff,**

v.

**Warren O. GREENE, et al., Defendants.**

**No. 23742.**

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 4, 1997.

Decided June 2, 1997.

---

Harry P. Waddell, Wilkes & Waddell, Martinsburg, for Plaintiff.

Kimberly Croyle, Charles F. Printz, Jr., Bowles Rice McDavid Graff & Love, Martinsburg, for Warren Greene.

Glenn P. Hare, Douglas S. Rockwell, Steptoe & Johnson, Charles Town, for Coalition for the Homeless.

Darrell V. McGraw, Jr., Attorney General, Mary Katherine Buchmelter, Deputy Attorney General, Charleston, for Amicus Curiae West Virginia Human Rights Commission.

McHUGH, Justice:

This case is before this Court upon four certified questions [1] from the Circuit Court of Jefferson County regarding whether the employing entity in this case is an "employer" under *W.Va.Code*, 5–11–3(d) [1994] of the West Virginia Human Rights Act and, if the employing entity is not a statutory employer, whether the plaintiff can nevertheless maintain a sex discrimination claim under the Human Rights Act directly against her supervisor. We are also asked to address whether the plaintiff can maintain a cause of action at common law against her former employer for retaliatory discharge based on alleged sex discrimination or sexual harassment.

The certified questions, as well as the circuit court's answers to them, are as follows:

I. Question: As to whether an entity is an 'employer' under the West Virginia Human Rights Act, should the Court follow the standard contained in 42 U.S.C. 2000e(b) in determining the applicable period of time during which twelve or more persons must be employed?

Answer by the circuit court: Yes.

II. Question: Is the Coalition for the Homeless of Jefferson County, West Virginia, an 'employer' within the definition of the West Virginia Human Rights Act?

Answer by the circuit court: No.

III. Question: Can an employee maintain an action directly against her supervisor for sexual discrimination/harassment under the West Virginia Human Rights Act for actions of a 'statutory employer' even though the employer of both the accused supervisor and complaining employee lacks a sufficient number of employees to be subject to the West Virginia Human Rights Act?

Answer by the circuit court: No.

IV. Question: Can an 'at-will' employee maintain a tort action at common law for retaliatory discharge based on allegations of nonphysical sexual discrimination and/or harassment?

Answer by the circuit court: No.

I.

FACTS

The following relevant facts of this case are undisputed and have been stipulated by the parties:

The Coalition for the Homeless of Jefferson County, West Virginia, Inc. (hereinafter "Coalition") is a non-profit corporation with its principal place of business in Jefferson County, West Virginia. Plaintiff Sharon N. Williamson (hereinafter "plaintiff") was employed as the Coalition's office manager and bookkeeper from September 9, 1994 until March 31, 1995. She was an at-will employee. During the time of plaintiff's employment at the Coalition, the Coalition also employed defendant Warren O. Greene as its executive director and plaintiff's immediate supervisor.

In March of 1995, the Coalition, through Defendant Greene, informed plaintiff that her employment was being terminated on March 31, 1995. Plaintiff subsequently filed a complaint in the Circuit Court of Jefferson County, alleging that Defendant Greene committed certain nonphysical acts and misconduct constituting sexual harassment by creating a discriminatory and/or hostile work environment for plaintiff based upon her sex.[2] Plaintiff further alleged that she was terminated in retaliation for her opposition to Defendant Greene's unlawful sexual harassment and discrimination, in violation of the

---

1. *See W.Va.Code*, 58–5–2 [1967]; *W.Va.R.App.P.* 13.

2. Plaintiff's amended complaint specifically alleges instances of misconduct by Defendant

Greene which, according to plaintiff, amounted to sex discrimination and harassment. However, the merits of plaintiff's claims are not presently before us.

West Virginia Human Rights Act, *W.Va. Code*, 5–11–1, *et seq.*

According to the Coalition's records, in 1994, it employed, including plaintiff and Defendant Greene, twelve or more employees during the weeks of June 19 and June 26.[3] The Coalition's records further indicate that in 1995, it employed, including plaintiff and Defendant Greene, twelve or more employees during the weeks of September 3, 10, 17 and 24, October 1, 15, 22, and 29, and November 5, 12, 19 and 26.[4]

The above questions were certified to this Court by order entered April 19, 1996, pursuant to *W.Va.Code*, 58–5–2 [1967].[5]

## II.

### STANDARD OF REVIEW

■ In syllabus point one of *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996), we stated: "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" (*citing Simon v. G.D. Searle & Co.*, 816 F.2d 397, 400 (8th Cir.), *cert denied*, 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987).) *See Id.*, 197 W.Va. at 174, 475 S.E.2d at 174.

**3.** Though the parties have stipulated that the Coalition employed, *including plaintiff*, twelve or more employees during the weeks of June 19 and June 26, 1994, these dates were, in fact, *prior* to plaintiff's employment there.

**4.** Though the parties have stipulated that the Coalition employed, *including plaintiff*, twelve or more employees during the weeks of September 3, 10, 17 and 24, 1995, October 1, 15, 22, and 29, 1995, and November 5, 12, 19 and 26, 1995, these dates were, in fact, *after* plaintiff was discharged from employment there.

**5.** *W.Va.Code*, 58–5–2 [1967] provides, in pertinent part:

> **Certification to supreme court of appeals as to sufficiency of summons, return of service, pleading, motion for summary judgment, etc.; presentation of portions of record.**
> Any question arising upon the sufficiency of a summons or return of service, upon a challenge of the sufficiency of a pleading or the venue of the circuit court, upon the sufficiency of a motion for summary judgment where such motion is denied, or a motion for judgment on the pleadings, upon the jurisdiction of the cir-

## III.

### DISCUSSION

#### A.

As indicated above, certified questions one and two involve the definition of the term "employer" under *W.Va.Code*, 5–11–3(d) [1994] of the West Virginia Human Rights Act and application of that statutory definition to the employing entity in this case, the Coalition. *W.Va.Code*, 5–11–3(d) [1994] provides: "The term 'employer' means the state, or any political subdivision thereof, and *any person*[6] *employing twelve or more persons within the state:* Provided, That such terms shall not be taken, understood or construed to include a private club[.][7]" (footnotes and emphasis added).

■ Both the plaintiff and the West Virginia Human Rights Commission (hereinafter "Commission"), as amicus curiae, maintain that because *W.Va.Code*, 5–11–3(d) [1994], quoted above, does not specify a time period during which an employing entity must employ twelve or more persons within the state in order for such entity to be an "employer," *W.Va.Code*, 5–11–3(d) [1994] should be construed broadly to accomplish the purpose and objective of the West Virginia Human Rights

cuit court of a person or subject matter, or upon failure to join an indispensable party, in any case within the appellate jurisdiction of the supreme court of appeals, may, in the discretion of the circuit court in which it arises, and shall on the joint application of the parties to the suit, in beneficial interest, be certified by it to the supreme court of appeals for its decision, and further proceedings in the case stayed until such question shall have been decided and the decision thereof certified back. Certified questions 1, 2 and 3 concern subject matter jurisdiction under the West Virginia Human Rights Act, *W.Va.Code*, 5–11–1, *et seq.* The issue raised in certified question 4 was decided by the circuit court on the Coalition's motion for judgment on the pleadings.

**6.** *W.Va.Code*, 5–11–3(a) [1994] defines the term "person" as "one or more individuals, partnerships, associations, organizations, corporations, labor organizations, cooperatives, legal representatives, trustees, trustees in bankruptcy, receivers and other organized groups of persons[.]"

**7.** The parties have stipulated that the Coalition is *not* a private club.

Act.[8] *W.Va.Code,* 5–11–15 [1967] ("The provisions of this article shall be liberally construed to accomplish its objectives and purposes." *Id.* in relevant part); *Skaff v. West Virginia Human Rights Com'n,* 191 W.Va. 161, 162, 444 S.E.2d 39, 40 (1994); syl. pt. 1, *Paxton v. Crabtree,* 184 W.Va. 237, 400 S.E.2d 245 (1990). It is therefore their contention that *W.Va.Code,* 5–11–3(d) [1994] should be liberally interpreted as follows: an employing entity is an "employer" under *W.Va.Code,* 5–11–3(d) [1994] if it has employed a *total* of twelve or more persons within the state during the 365–day period preceding the filing of an administrative complaint pursuant to *W.Va.Code,* 5–11–10 [1987], regardless of whether twelve or more persons were employed on any one day or during any one pay period.[9]

In sharp contrast to the arguments of plaintiff and the Commission, the circuit court concluded that to be an "employer" under *W.Va.Code,* 5–11–3(d) [1994], the period of time during which twelve or more employees must be employed by an employing entity is that period of time set forth in *W.Va.Code,* 5–11–3(d) [1994]'s federal counterpart, 42 U.S.C. § 2000e(b) (1991), which specifically provides, in pertinent part: "The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees *for each working day in each of twenty or more calendar weeks in the current or preceding calendar year*[.]" (emphasis added).

In applying this federal standard to the stipulated facts of this case, the circuit court apparently concluded that the Coalition did not employ twelve or more employees "for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." *Id.* As a result, the circuit court found that the Coalition was not an "employer" under the West Virginia Human Rights Act.

We agree with the circuit court's conclusion that the Coalition is not an "employer" under *W.Va.Code,* 5–11–3(d) [1994]. However, the circuit court erroneously determined, as a matter of law, that the period of time during which twelve or more employees must be employed by an employing entity under *W.Va.Code,* 5–11–3(d) [1994] is that period of time which is set forth in 42 U.S.C. § 2000e(b) (1991) ("for each working day in each of twenty or more calendar weeks in the current or preceding calendar year").

■■■ We have indicated in prior cases that "[i]t is not for [courts] arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, *we are obliged not to add to statutes something the Legislature purposely omitted.*" *Banker v. Banker,* 196 W.Va. 535, 546–47, 474 S.E.2d 465, 476–77 (1996) (*citing Bullman v. D & R Lumber Company,* 195 W.Va. 129, 464 S.E.2d 771 (1995); *Donley v. Bracken,* 192 W.Va. 383, 452 S.E.2d 699 (1994)). (emphasis added). *See State ex rel. Frazier v. Meadows,* 193 W.Va. 20, 24, 454 S.E.2d 65, 69 (1994). Moreover, "[a] statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten." Syl. pt. 1, *Consum-*

---

8. See *W.Va.Code,* 5–11–2 [1989] (declaring it to be this State's public policy to provide equal opportunity for employment for its citizens without regard to, among other things, an individual's sex). For a complete recitation of *W.Va. Code,* 5–11–2 [1989], see p. 429, 490 S.E.2d at 31, *infra.*

9. In its December 12, 1995 decision of *Shaffer v. Bentley's Luggage Corp.,* Docket No. ES–33–92, the Commission explained that "[a] 365 day period for counting employees was chosen because that is the number of days given an individual to file an administrative complaint. *W.Va.Code* § 5–11–10." *Id.* at p. 7 n. 6.

Both the plaintiff and the Commission contend that this Court should defer to the latter's interpretation of the term "employer" in *W.Va.Code,* 5–11–3(d) [1994], as it is the government body charged with the statute's administration. Though we are mindful that the Commission's interpretation of *W.Va.Code,* 5–11–3(d) [1994] should be given "great weight" unless it is clearly erroneous, syl. pt. 7, *Lincoln County Bd. of Educ. v. Adkins,* 188 W.Va. 430, 424 S.E.2d 775 (1992), "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. pt. 1, *Appalachian Power Co. v. State Tax Dept.,* 195 W.Va. 573, 466 S.E.2d 424 (1995). As will be discussed below, this Court concludes that *W.Va. Code,* 5–11–3(d) [1994] is clear and unambiguous and as such, is not to be construed, but applied as written. *See* Discussion, *infra.*

*er Advocate Division v. Public Service Commission*, 182 W.Va. 152, 386 S.E.2d 650 (1989). *See Sowa v. Huffman*, 191 W.Va. 105, 111, 443 S.E.2d 262, 268 (1994).

■ These cautionary principles notwithstanding, the circuit court interpolated specific federal statutory language into our Human Rights Act. We find that it was error for the circuit court to do so, as we agree with the Coalition that *W.Va.Code*, 5–11–3(d) [1994] is clear and unambiguous and should not be interpreted but instead, should be applied as written. *See Frazier*, 193 W.Va. at 24, 454 S.E.2d at 69; *Craig v. City of Huntington*, 179 W.Va. 668, 670, 371 S.E.2d 596, 598 (1988). This Court has traditionally held:

> ' "When a statute is clear and unambiguous and the legislative intent is plain the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Point 1, syllabus, *State ex rel. Fox v. Board of Trustees of the Policemen's Pension or Relief Fund of the City of Bluefield, et al.*, 148 W.Va. 369 [135 S.E.2d 262 (1964)].' Syllabus Point 1, *State ex rel. Board of Trustees v. City of Bluefield*, 153 W.Va. 210, 168 S.E.2d 525 (1969).

Syl. pt. 1, *W. Va. Radiologic Technology Bd. v. Darby*, 189 W.Va. 52, 427 S.E.2d 486 (1993).

■ *W.Va.Code*, 5–11–3(d) [1994] clearly and unambiguously provides that an "employer," for purposes of the West Virginia Human Rights Act, means "any person *employing* twelve or more persons within the state[.]" *Id.* in relevant part. (emphasis added). As a matter of grammar and of logic, the use of the term "employing," without more, refers to the time when the acts giving rise to the alleged unlawful discriminatory practice were committed. *Cf. Commonwealth of Pa. v. Kimmel*, 523 Pa. 107, 565 A.2d 426, 428 (1989) (The term " '[v]iolating' in the common usage of the term refers to the time when the offensive conduct takes place[.]").[10]

Thus, pursuant to *W.Va.Code*, 5–11–3(d) [1994] of the West Virginia Human Rights Act, the term "employer" means the state, or any political subdivision thereof, and any person employing twelve or more persons within the state: Provided, That such terms shall not be taken, understood or construed to include a private club. To be an "employer" under *W.Va.Code*, 5–11–3(d) [1994], a person must have been employing twelve or more persons within the state at the time the acts giving rise to the alleged unlawful discriminatory practice were committed.

■ According to the stipulated facts of this case, plaintiff was employed by the Coalition from September 9, 1994 until March 31, 1995. Although both prior and subsequent to these dates, the Coalition, during various periods of time, employed twelve or more persons within the state, it appears undisputed that during the dates of plaintiff's employment and at the time the offensive acts alleged took place,[11] the Coalition did

---

10. As previously indicated, this Court has simply applied the definition of the term "employer" as written. *See Darby, supra*. Should changes in the statutory definition be warranted, the legislature, rather than this Court, is the proper entity to make such changes. *See* syl. pt. 4, *Bennett v. Warner*, 179 W.Va. 742, 372 S.E.2d 920 (1988).

11. For example, plaintiff's complaint alleged the following:

10. On March 13, 1995, [Defendant Greene] called the Plaintiff into his office and shut and locked the door. [Defendant Greene] began to tell the Plaintiff about the difficult time he was having since his mother's death. During this conversation [Defendant Greene] told the Plaintiff that he was having dreams of the two of them engaged in sexual relations. The Plaintiff felt confused and uncomfortable

about this conversation and wondered why this information was being related to her.

11. On Friday evening, March 17, 1995, the Plaintiff received a telephone call from [Defendant Greene] while she was at home. [Defendant Greene] proceeded to tell the Plaintiff that he was stretched out across his bed and asked what she was doing. Plaintiff told [Defendant Greene] that she was getting ready for company to arrive and was busy. The rest of the conversation consisted of nothing that had not already been discussed during working hours that same day. Plaintiff again told [Defendant Greene] that she had company coming and that she had to go.

12. On or about March 22, 1995, the Plaintiff confronted [Defendant Greene] and told him that she believed his actions and comments were inappropriate and amounted to

*not* employ twelve or more persons. Thus, the Coalition was not "employing twelve or more persons within the state" within the meaning of *W.Va.Code,* 5–11–3(d) [1994]. Under the facts of this case then, the Coalition is not an "employer" under the West Virginia Human Rights Act.

### B.

The final certified question [12] concerns whether plaintiff can maintain a common law claim against the Coalition for retaliatory discharge for sex discrimination or sexual harassment. Certified question four, which the circuit court answered in the negative, is posed as follows: Can an "at-will" employee maintain a tort action at common law for retaliatory discharge based on allegations of nonphysical sexual discrimination and/or harassment?

As we determined above, plaintiff has no cognizable claim for retaliatory discharge against the Coalition under the West Virginia Human Rights Act because the Coalition is not an "employer" under *W.Va.Code,* 5–11–3(d) [1994]. Plaintiff amended her complaint asserting that in the event the Coalition is not a statutory employer, she has a common law claim for retaliatory discharge based

upon alleged sex discrimination or sexual harassment, pursuant to *Harless v. First National Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978).

▇ There is no dispute that at the time plaintiff was terminated from her employment at the Coalition, she was an "at-will" employee. Prior to this Court's decision in *Harless, supra,* it was an established principle in this jurisdiction that an employee who is so employed could be discharged with or without cause. *Id.,* 162 W.Va. at 119–20, 246 S.E.2d at 273 (*citing Wright v. Standard Ultramarine and Color Co.,* 141 W.Va. 368, 382, 90 S.E.2d 459, 468 (1955) and *Adair v. United States,* 208 U.S. 161, 28 S.Ct. 277, 52 L.Ed. 436 (1908)). In *Harless,* however, we recognized the growing trend that an employer may be liable if he or she terminates an at-will employee in contravention of some substantial public policy:

> [t]he rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy princip[le], then the employer may be liable to the employee for damages occasioned by this discharge.[13]

---

sexual harassment. The Plaintiff also informed [Defendant Greene] that she desired to take time off from work for a few days.

13. The Plaintiff returned to work on Monday, March 27, 1995. During the week of March 27th [Defendant Greene] was rude and verbally abusive to the Plaintiff. On Friday, March 31, 1995, the Plaintiff was told by [Defendant Greene] that she was being terminated.

**12.** We note that plaintiff failed to address certified question three in her brief to this Court. Certified question three, which the circuit court answered in the negative, states:

Can an employee maintain an action directly against her supervisor for sexual discrimination/harassment under the West Virginia Human Rights Act for actions of a 'statutory employer' even though the employer of both the accused supervisor and complaining employee lacks a sufficient number of employees to be subject to the West Virginia Human Rights Act?

In *Shell v. Metropolitan Life Ins. Co.,* 181 W.Va. 16, 25, 380 S.E.2d 183, 192 (1989), this Court stated: " '[w]e have traditionally maintained that upon receiving certified questions we retain some flexibility in determining how and *to*

*what extent they will be answered. West Virginia Water Serv. Co. v. Cunningham,* 143 W.Va. 1, 98 S.E.2d 891 (1957).' *City of Fairmont v. Retail, Wholesale, and Dept. Store Union, AFL–CIO,* 166 W.Va. 1, 3–4, 283 S.E.2d 589, 590–91 (1980)." (emphasis added). We decline to answer certified question 3 in light of plaintiff's failure to address the issue raised therein. *See* syl. pt. 6, *Addair v. Bryant,* 168 W.Va. 306, 284 S.E.2d 374 (1981) ("Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived.").

**13.** In *Harless,* the at-will employee was terminated from his employment at a bank when he reported his employer's intentional violations of the West Virginia Consumer Credit and Protection Act, *W.Va.Code,* 46A–1–101, *et seq.* We stated, without hesitation, that

> the Legislature intended to establish a clear and unequivocal public policy that consumers of credit covered by the Act were to be given protection. Such manifest public policy should not be frustrated by a holding that an employee of a lending institution covered by the Act[,] who seeks to ensure that compliance is being made with the Act, can be discharged without being furnished a cause of action for such discharge.

*Id.* at syllabus. (footnote added). *See also Cordle v. General Hugh Mercer Corp.*, 174 W.Va. 321, 325 S.E.2d 111 (1984).

We subsequently clarified the phrase "substantial public policy" in *Birthisel v. Tri–Cities Health Services, Corp.*, 188 W.Va. 371, 424 S.E.2d 606 (1992), explaining that it was

> designed to exclude claims that are based on insubstantial considerations. The term 'substantial public policy' implies that the policy principle will be clearly recognized simply because it is substantial. An employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations.

*Id.,* 188 W.Va. at 377, 424 S.E.2d at 612. In syllabus points two and three of *Birthisel,* we held:

> 2. To identify the sources of public policy for purposes of determining whether a retaliatory discharge has occurred, we look to established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions.
>
> 3. Inherent in the term 'substantial public policy' is the concept that the policy will provide specific guidance to a reasonable person.

*Id. See also Roberts v. Adkins,* 191 W.Va. 215, 444 S.E.2d 725 (1994); *Lilly v. Overnight Transportation Co.,* 188 W.Va. 538, 425 S.E.2d 214 (1992); *Collins v. Elkay Mining Co.,* 179 W.Va. 549, 371 S.E.2d 46 (1988); *Shanholtz v. Monongahela Power Co.,* 165 W.Va. 305, 270 S.E.2d 178 (1980).

The West Virginia Human Rights Act sets forth this State's public policy concerning an individual's right to equal opportunity in employment without regard to either sex, race, age, handicap, religion or national origin. *W.Va.Code,* 5–11–2 [1989] states:

> It is the public policy of the state of West Virginia to provide all of its citizens equal opportunity for employment, equal access to places of public accommodations, and equal opportunity in the sale, purchase, lease, rental and financing of housing accommodations or real property. *Equal opportunity in the areas of employment* and public accommodations *is hereby declared to be a human right or civil right of all persons without regard to race, religion, color, national origin, ancestry, sex, age, blindness or handicap.* Equal opportunity in housing accommodations or real property is hereby declared to be a human right or civil right of all persons without regard to race, religion, color national origin, ancestry, sex, blindness, handicap, or familial status.
>
> *The denial of these rights to properly qualified persons by reason of race, religion, color, national origin, ancestry, sex, age, blindness, handicap, or familial status is contrary to the principles of freedom and equality of opportunity and is destructive to a free and democratic society.*

(emphasis added).

The West Virginia Human Rights Act further makes it an unlawful discriminatory practice "[f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment[.]" *W.Va.Code,* 5–11–9(1) [1992], in relevant part. *See Holstein v. Norandex, Inc.,* 194 W.Va. 727, 730, 461 S.E.2d 473, 476 (1995). The term "discriminate" means "to exclude from, or fail or refuse to extend to, a person equal opportunities because of ... sex[.]" [14] *W.Va.Code,* 5–11–3(h) [1994], in relevant part.

Furthermore, *"W.Va.Code* 5–11–9(7)(C) (1992), prohibits an employer or other person from retaliating against any individual for expressing opposition to a practice that he or she reasonably and in good faith believes

---

*Id.,* 162 W.Va. at 125–26, 246 S.E.2d at 276.

**14.** "[S]exual harassment, at the workplace, is an invidious form of discrimination[.]" *Westmoreland Coal Co. v. West Virginia Human Rights Com'n,* 181 W.Va. 368, 372, 382 S.E.2d 562, 566 (1989). *See Conrad v. ARA Szabo,* 198 W.Va.

362, 480 S.E.2d 801 (1996). *See* syl. pt. 8, *Hanlon v. Chambers,* 195 W.Va. 99, 464 S.E.2d 741 (1995) ("The West Virginia Human Rights Act, *W.Va.Code* 5–11–9(1) (1992), imposes a duty on employers to ensure that workplaces are free of sexual harassment from whatever source.")

violates the provisions of the West Virginia Human Rights Act." Syl. pt. 11, *Hanlon v. Chambers,* 195 W.Va. 99, 464 S.E.2d 741 (1995). *W.Va.Code,* 5–11–9(7)(C) [1992] states:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or except where based upon applicable security regulations established by the United States or the state of West Virginia or its agencies or political subdivisions:

. . . .

(7) For any person, employer, employment agency, labor organization, owner, real estate broker, real estate salesman or financial institution to:

. . . .

(C) Engage in any form of reprisal or otherwise discriminate against any person because he has opposed any practices or acts forbidden under this article or because he has filed a complaint, testified or assisted in any proceeding under this article.

The West Virginia Human Rights Act establishes a clear and unequivocal public policy against sex discrimination in employment and retaliatory discharge based thereon. Although the plaintiff in this case cannot maintain a claim against the Coalition for violations of the Act because the Coalition is not a statutory employer, the Act's anti-discrimination policy is substantial and provides specific guidance to reasonable employers with regard to discrimination in employment. *Birthisel,* at syl. pt. 3.

In *Kerrigan v. Magnum Entertainment, Inc.,* 804 F.Supp. 733 (D.Md.1992), a female employee discharged from employment two weeks after informing her employer that she was pregnant, alleged a common law claim for wrongful discharge based on sex discrimination. *Id.,* 804 F.Supp. at 734. Plaintiff had no available statutory remedy because her former employer employed fewer than fifteen persons. *Id.*[15] The United States District Court for the District of Maryland rejected the defendant employer's argument that small businesses were excluded from the statutory reach of Maryland's Fair Employment Practices Law and Title VII of the Civil Rights Act of 1964, as amended, as a "result of deliberate legislative intent to avoid burdening small businesses with suits alleging discrimination in employment." *Id.,* 804 F.Supp. at 735. The court in *Kerrigan* observed that although small businesses were exempt from the burdensome *administrative* requirements of the statute, it could find no evidence of "an intention to grant small business a charter to discriminate" or "exempting small business from [Maryland's] anti-discrimination policy."[16] *Id.,* 804 F.Supp. at 736. (footnote added).

'It is hereby declared to be the policy of the State of Maryland ... to assure all persons equal opportunity in receiving employment ... regardless of race, color, religion, ancestry or national origin, sex, age, marital status, or physical or mental handicap ... to prohibit discrimination in employment by any persons, group, labor organization, organization or any employer or his agents.'

*Molesworth,* 672 A.2d at 611–12. (emphasis omitted). The court examined the above statutory language, noting, among other things, that it "proscribes discrimination in employment by '*any* employer.' " *Id.,* 672 A.2d at 613. (emphasis provided). Indeed, "[i]f the term 'employer' in § 14 were meant to refer only to employers as defined in § 15(b) [the provision requiring, *inter alia,* that 15 or more employees be employed], the term 'any' would be unnecessary." *Id.* The court thus concluded that the antidiscrimination policy enunciated in § 14, quoted above, "applies to 'any employer,' including those exempted in § 15(b)." *Id. See* n. 15, *supra.*

---

**15.** Maryland's anti-discrimination law defines an "employer" as, *inter alia,* "a person engaged in an industry or business who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person[.]" Md.Code Ann. Art. 49B § 15(b) (1994), in relevant part. Maryland's statutory definition is substantially similar to the federal version found in 42 U.S.C. § 2000e(b) (1991), *supra.*

**16.** In *Molesworth v. Brandon,* 341 Md. 621, 672 A.2d 608 (1996), the Court of Appeals of Maryland likewise determined that a female employee could maintain a common law cause of action for wrongful discharge based on alleged sex discrimination against an employer with less than the requisite fifteen employees. *See* n. 15, *supra.* The public policy supporting the employee's wrongful discharge claim was announced in Maryland's anti-discrimination law, Md.Code Ann. Art. 49B, § 14 (1994), which provides, in pertinent part:

In *Collins v. Rizkana*, 73 Ohio St.3d 65, 652 N.E.2d 653, *reh'g denied*, 74 Ohio St.3d 1409, 655 N.E.2d 188 (1995), the Supreme Court of Ohio determined that a source of express public policy prohibiting sexual harassment/discrimination could be found in that state's civil rights statute which prohibits employment discrimination based on sex.[17] *Id.*, 652 N.E.2d at 659. The court in *Collins* emphasized that the plaintiff employee had no remedy available to her under Ohio's civil rights statute because her employer never employed four or more employees, the requisite number of employees to bring him within the statutory definition of "employer." *Id.*, 652 N.E.2d at 660. *See Id.*, 652 N.E.2d at 661 ("[W]e cannot find it to be Ohio's public policy that an employer with three employees may condition their employment upon the performance of sexual favors while an employer with four employees may not."). *See also Bennett v. Hardy*, 113 Wash.2d 912, 784 P.2d 1258 (1990).

As indicated above, the West Virginia Human Rights Act clearly constitutes this state's "substantial public policy" against sex discrimination and sexual harassment in employment, including retaliatory discharge based thereon. Although the Act does not provide this plaintiff with a statutory remedy,[18] it nevertheless sets forth a clear statement of public policy sufficient to support a common law claim for retaliatory discharge against an employer, such as the Coalition, exempted by *W.Va.Code*, 5–11–3(d) [1994]. *Molesworth*, 672 A.2d at 616. We hold that even though a discharged at-will employee has no statutory claim for retaliatory discharge under *W.Va.Code*, 5–11–9(7)(C) [1992] of the West Virginia Human Rights Act because his or her former employer was not employing twelve or more persons within the state at the time the acts giving rise to the alleged unlawful discriminatory practice were committed, as required by *W.Va.Code*, 5–11–3(d) [1994], the discharged employee may nevertheless maintain a common law claim for retaliatory discharge against the employer based on alleged sex discrimination or sexual harassment because sex discrimination and sexual harassment in employment contravene the public policy of this State articulated in the West Virginia Human Rights Act, *W.Va.Code*, 5–11–1, *et seq.*

## IV.

## CONCLUSION

In summary, we answer certified question one in the negative, as the period of time during which twelve or more employees must be employed by an employing entity under *W.Va.Code*, 5–11–3(d) [1994] is *not* that period of time set forth in 42 U.S.C. § 2000e(b) (1991) ("for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.") We answer certified question two in the negative as well, because the Coalition, under the facts before us, is not an "employer" under *W.Va. Code*, 5–11–3(d) [1992] because it was not employing twelve or more persons within the state at the time the acts giving rise to the alleged unlawful discriminatory practice were committed. As indicated in n. 12, *supra*, we decline to answer certified question three. Finally, we answer certified question four in the affirmative, as plaintiff may maintain a common law claim for retaliatory discharge based on alleged sex discrimination or sexual harassment because sex discrimination and sexual harassment violate this State's public policy. Having answered the certified questions posed by the Circuit Court of Jefferson

---

17. The *Collins* court indicated that other sources of statutorily expressed public policy prohibiting sexual harassment/discrimination alleged include sex offense statutes prohibiting sexual imposition and prostitution. *Id.*, 652 N.E.2d at 658. The court noted, however, that each source of statutorily expressed public policy prohibiting the harassment and discrimination alleged is *"independently* sufficient to allow for the recognition of a cause of action for wrongful discharge in violation of public policy." *Id.* (emphasis added).

18. Ordinarily, a plaintiff alleging violations of the West Virginia Human Rights Act may file a complaint with the Commission, or in the alternative, in circuit court. Syl. pt. 1, *Price v. Boone County Ambulance Authority*, 175 W.Va. 676, 337 S.E.2d 913 (1985). The remedies for violations of *W.Va. Code*, 5–11–9 [1992] are those set out in *W.Va. Code*, 5–11–13(c) [1983]. *Id.* at syl. pt. 2.

County, this case is dismissed from the docket of this Court.

Certified questions answered; case dismissed.