2000 UT 18

**Hubert C. BURTON, M.D., Plaintiff and Appellant,**

v.

**EXAM CENTER INDUSTRIAL & GENERAL MEDICAL CLINIC, INC., and Howard Boulter, Defendants and Appellees.**

**No. 980040.**

Supreme Court of Utah.

Jan. 19, 2000.

---

Robert H. Wilde, Kevin C. Probasco, Midvale, for plaintiff.

Glen M. Richman, Bart J. Johnsen, Salt Lake City, for defendants.

Lois A. Baar, W. Mark Gavre, Salt Lake City, for amicus Utah Manufacturers Association.

Stephen C. Clark, Salt Lake City, for amicus American Civil Liberties Union of Utah Foundation, Inc.

Arthur F. Sandack, Salt Lake City, for amicus Utah State American Federation of Labor—Congress of Industrial Organizations.

HOWE, Chief Justice:

¶ 1 Plaintiff Hubert C. Burton, M.D., appeals from the trial court's grant of summary judgment to defendants Exam Center Industrial & General Medical Clinic, Inc. (the "Clinic"), and Howard Boulter in this action wherein Burton alleges that his employment with the Clinic was terminated because of his age.

## BACKGROUND

¶ 2 In July 1994, Boulter, president and chief operating officer of the Clinic, terminated the sixty-nine-year-old Burton, a part-time physician at the Clinic. Boulter told Burton that the Clinic had hired a full-time physician, eliminating the need for Burton's services. Boulter explained that the decision to hire this new physician was made suddenly, out of necessity, and stated: "I [Boulter] didn't know how much longer you older guys wanted to work, and I felt that we couldn't pass up this opportunity to employ a full-time physician."[1] Burton subsequently filed a complaint with the Utah Anti–Discrimination Division ("UADD"), alleging his termination

---

1. The parties dispute exactly what was said at that meeting; however, in reviewing a summary judgment, it is well settled that we relate the facts of the case and all reasonable inferences arising therefrom in a light favorable to the non-moving party, *see White v. Deseelhorst,* 879 P.2d 1371, 1373 (Utah 1994), and we do so here.

was age related.[2] The UADD responded that because the Clinic had fewer than fifteen employees, under the terms of the Utah Anti–Discrimination Act ("UADA")[3] the Clinic was not under the UADD's jurisdiction. The federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621 to 634 (1998) ("ADEA"), and many similar state acts typically exempt small employers from their provisions.

¶ 3 Burton then filed this action against the Clinic and Boulter (collectively, "Exam Center"), alleging that his firing violated a public policy found in both state and federal statutes against taking employment actions toward employees because of their age and asserting that violation of that public policy gives rise to a claim for tortious wrongful termination.[4] Exam Center moved for summary judgment on Burton's tortious wrongful termination allegation. After a hearing on the motion and the submission of supplemental briefs, the trial court denied the summary judgment, citing the existence of a factual dispute. Upon Exam Center's motion for reconsideration, however, the trial court reversed its earlier ruling and granted the summary judgment, based on language from *Retherford v. AT & T Communications*, 844 P.2d 949 (Utah 1992), and held that the UADA preempts any common law cause of action for tortious wrongful termination. Burton now appeals from this grant of summary judgment.[5]

## STANDARD OF REVIEW

■ ¶ 4 Before granting summary judgment, a court must, after viewing the facts in the light most favorable to the nonmoving party, find that no disputed issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c); *Harnicher v. University of Utah Med. Ctr.*, 962 P.2d 67, 69 (Utah 1998). Review of a trial court's grant of summary judgment includes a determination of whether the trial court correctly applied governing law, affording no deference to the trial court's determination or conclusions of law. *See Harper v. Great Salt Lake Council, Inc.*, 976 P.2d 1213, 1216 (Utah 1999); *Harnicher*, 962 P.2d at 69.

## ANALYSIS

¶ 5 The UADA provides:

(1) It is a discriminatory or prohibited employment practice:

(a)(i) for an employer to refuse to hire, or promote, or to discharge, demote, terminate any person, or to retaliate against, harass, or discriminate in matters of compensation or in terms, privileges, and conditions of employment against any person otherwise qualified, because of race, color, sex, pregnancy, childbirth, or pregnancy-related conditions, *age, if the individual is 40 years of age or older*, religion, national origin, or handicap.

Utah Code Ann. § 34–35–6(1)(a)(i) (1994) (emphasis added). Burton contends that in enacting the foregoing statute, the legislature has recognized and declared a public policy against age discrimination in employment practices including termination of em-

---

**2.** Burton alleged that this new doctor was a "much younger" man. His exact age is unclear from the record, but he was over the age of forty.

**3.** At the time of Dr. Burton's termination, title 34, chapter 35 of the Utah Code embodied the UADA. Unless noted otherwise, all references herein to the UADA will be to the 1994 statutes. The UADA contains the following definitions:

(6) "Employee" means any person applying with or employed by an employer.
(7) "Employer" means the state or any political subdivision..., and every other person employing 15 or more employees within the state for each working day in each of 20 calendar weeks or more in the current or preceding

calendar year; but it does not include religious organizations or associations....
Utah Code Ann. § 34–35–2(6), (7).

**4.** In addition to tortious wrongful termination, Burton's complaint set forth two other causes of action: (1) failure to pay wages timely upon termination, and (2) recovery of attorney fees incurred in pursuing timely payment of those wages.

**5.** Upon this court's request, the Utah Manufacturers Association ("UMA"), the Utah State American Federation of Labor–Congress of Industrial Organizations ("AFL–CIO"), and the American Civil Liberties Union of Utah Foundation, Inc. ("ACLU"), provided amicus briefs.

ployment. He argues that because the UADA covers only employers with fifteen or more employees, he has no administrative remedy through the UADD and that this court should afford him a remedy by recognizing a tort cause of action for wrongful termination so as to put him on an equal basis with employees of employers of fifteen or more employees. In sum, Burton contends that we should create a cause of action to fill the void left by the enactment of the UADD. He also asserts that denying him a tort remedy would violate the open courts guarantee of article I, section 11 of the Utah Constitution.

¶ 6 We begin by observing that under our case law, there is a presumption that an employment relationship which has no specified term of duration is an at-will relationship, but that presumption is subject to a number of limitations. *See Fox v. MCI Communications Corp.*, 931 P.2d 857, 859 (Utah 1997). In that case, we recognized:

> An at-will employee may overcome that presumption by demonstrating that (1) there is an implied or express agreement that the employment may be terminated only for cause or upon satisfaction of another agreed-upon condition; (2) a statute or regulation restricts the right of an employer to terminate an employee under certain conditions; or (3) the termination of employment constitutes a violation of a clear and substantial public policy.

*Id.* (citations omitted). In that case, we further remarked that not every employment termination that has the effect of violating some public policy is actionable: "A public policy whose contravention is achieved by an employment termination must be 'clear and substantial' to be actionable." *Id.* at 860. Declarations of public policy can be found in constitutions and statutes, but not all statements made in statutes are expressions of public policy. *See Peterson v. Browning,* 832 P.2d 1280, 1282 (Utah 1992). We will not repeat the review of cases made in *Fox* wherein violations of public policy have and have not been found. Suffice it to observe here that none of them have involved termination due to the age of the employee.

¶ 7 The trial court granted summary judgment to the Exam Center in reliance on *Retherford*'s holding that the UADA provided the employee the exclusive remedy for wrongful termination in violation of the prohibited and discriminatory employment practices enumerated therein. The employee was not allowed to bring a tort action for wrongful discharge. However, in that case the complaining employee was covered by the UADA because her employer had fifteen or more employees. In the instant case, the Exam Center has less than fifteen employees, and the UADA affords Burton no protection or remedy. Thus *Retherford*'s holding arguably did not extend to small employers who were not within the purview of the UADA. We must therefore decide whether a public policy exists justifying the creation of a common law cause of action for Burton against the Exam Center for allegedly firing him due to his age.

¶ 8 In support of his position that we should create a common law cause of action to redress his termination, Burton relies on *Molesworth v. Brandon,* 341 Md. 621, 672 A.2d 608 (1996). In that case, the court had to decide whether a common law cause of action for wrongful discharge of a female employee based on sex discrimination lies against an employer with less than fifteen employees. Like our UADD, Maryland's Fair Employment Practices Act prohibits discrimination in employment based on race, color, religion, ancestry or national origin, sex, age, marital status, and other grounds. The Maryland Act also exempts from its terms employers with less than fifteen employees. The court sustained the plaintiff's right to sue her employer on the basis of "at least thirty-four statutes, one executive order, and one constitutional amendment in Maryland that prohibit discrimination based on sex in certain circumstances. Together these provisions provide strong evidence of the legislative intent to end discrimination based on sex in Maryland." *Id.* at 613–14. The court noted that the United States District Court for the District of Maryland in *Kerrigan v. Magnum Entertainment, Inc.,* 804 F.Supp. 733 (D.Md.1992), had earlier come to the same conclusion, observing that the employer's interpretation of the Mary-

land Act would mean that the "General Assembly intended to grant small businesses in Maryland a license to discriminate [on the basis of sex] against their employees with impunity." *Id.* at 735.

¶ 9 In reaching its decision, the Maryland court relied upon *Collins v. Rizkana,* 73 Ohio St.3d 65, 652 N.E.2d 653 (1995), where the Ohio Supreme Court upheld a wrongful discharge claim based on the public policy and a statute prohibiting discrimination in employment from which the employer was exempt. The court also cited with approval *Bennett v. Hardy,* 113 Wash.2d 912, 784 P.2d 1258 (1990), where the Washington Supreme Court held that a cause of action for wrongful discharge was available based on a statute prohibiting age discrimination but providing no remedy. *See also Williamson v. Greene,* 200 W.Va. 421, 490 S.E.2d 23 (1997), where it was held that even though an employer of less than twelve employees was not an "employer" within the meaning of the West Virginia Human Rights Act, a discharged at-will employee may maintain a common law action for retaliatory discharge against her employer based on alleged sex discrimination or sexual harassment because sex discrimination and sexual harassment in employment contravene the public policy of the state as articulated in the West Virginia Human Rights Act. For a general discussion of these issues, see Kimberly C. Simmons, Annotation, *Preemption of Wrongful Discharge Cause of Action by Civil Rights Laws,* 21 A.L.R.5th 1 (1994); Cara Yates, Annotation, *Application of State Law to Age Discrimination in Employment,* 51 A.L.R.5th 1 (1997).

¶ 10 The California Supreme Court reached the opposite result in *Jennings v. Marralle,* 8 Cal.4th 121, 32 Cal.Rptr.2d 275, 876 P.2d 1074 (1994). In that case, the court was considering a provision of California's Fair Employment and Housing Act ("FEHA"), which declared a state public policy of protecting and safeguarding the right and opportunity to seek, obtain, and hold employment without discrimination on various grounds, including age, defined as over forty years. The administrative remedies provided for in the FEHA, however, were not made available to employees whose employer did not regularly employ five or more persons. The court was asked to decide whether an employee to whom the administrative remedies were not available may nonetheless maintain a common law tort action for damages for wrongful discharge in violation of the public policy stated in the FEHA. The court concluded that permitting such an action would be inconsistent with the legislative intent reflected in various provisions of the FEHA, and particularly that provision which restricts employer liability for violations of the FEHA age provision to employers subject to the FEHA. The court wrote:

> This exemption of small employers from the FEHA ban on age discrimination was enacted simultaneously to and is inseparable from the legislative statement of policy. For that reason, and because no other statute or constitutional provision bars age discrimination, we conclude that there presently exists no "fundamental policy" which precludes age discrimination by a small employer. Thus, there is no independent basis for an action for tortious discharge in violation of policy.

*Id.* 32 Cal.Rptr.2d 275, 876 P.2d at 1076.

¶ 11 As we have earlier stated, Burton contends that the UADA declares a public policy against the termination of employees who are over the age of forty years and that such public policy applies to all employees, whether employed by an employer who has fifteen or more employees ("large employer") or an employer who has less than fifteen employees ("small employer"). He argues that small employers were exempted from the UADA because of the administrative burden it would place upon the UADD if all employers were under its jurisdiction. He points out that nothing in the UADA prohibits legal action against small employers who discriminate and that nationwide there are some eleven million workers who are not included within the purview of federal and state anti-discrimination employment acts.

 ¶ 12 We are not persuaded that the UADA declares a public policy which is "clear and substantial" with respect to small employers. The California Supreme Court's reasoning in *Jennings* that "the exemption of

small employers from [California's] FEHA ban on age discrimination was enacted simultaneously to, and is inseparable from, the legislative statement of policy," *id.*, is sound and unanswerable. Our legislature has made a similar decision to prohibit age discrimination in the termination of employees only by large employers, and if, as Burton contends, small employers should likewise be prohibited, that is a matter that the legislature, not the court, should address. An observation we made in *Baker v. Matheson,* 607 P.2d 233, 237 (Utah 1979), bears repeating here:

> Due respect for the legislative prerogative in lawmaking requires that the judiciary not interfere with enactments of the Legislature where disagreement is founded only on policy considerations and the legislative scheme employs reasonable means to effectuate a legitimate object. In matters not affecting fundamental rights, the prerogative of the legislative branch is broad and must by necessity be so if government is to be by the people through their elected representatives and not by judges.

¶ 13 Amicus ACLU suggests that the legislature additionally has declared a public policy against age discrimination in employment in Utah Code Ann. § 67–19–2(4), which was repealed in 1995 but was in effect at the time of Burton's termination in 1994. In that statute, the legislature declared that in the *state's* own employment practices, there should be equal employment opportunity without regard to age and other discriminatory practices. Amicus also relies on Utah Administrative Code R606–3–2, which prohibits age discrimination by persons contracting with the state. While arguably a public policy can be found in that statute and Code, it obviously has no application to a *private* employer. Nor do we find any federal statute that could provide the basis for a tort action against small employers. *See Leathem v. Research Found. of City Univ. of N.Y.,* 658 F.Supp. 651 (S.D.N.Y.1987) (stating that federal claim under federal statute "cannot serve as a basis to expand employees' remedies under New York State common law of tort"). Because we can find no constitutional provision or other statute which declares a *clear and substantial* public policy against age discrimination in employment practices,

we must decline to create an exception to the general rule prevailing in this state that employment is presumed to be on an at-will basis for both the employer and the employee.

¶ 14 The instant case can readily be distinguished from *Molesworth,* 672 A.2d at 608, one of the principal cases upon which Burton relies. *Molesworth* was a case of sex discrimination in employment. The Maryland court found "at least thirty-four statutes, one executive order, and one constitutional amendment" that prohibit discrimination based on sex in certain circumstances. *Id.* at 613–14. There is no such constitutional · or statutory declaration of public policy in Utah against discrimination on account of age in the termination of employment of employees of small employers. The dissent in the instant case relies on *Molesworth* but fails to note that in finding a public policy against sex discrimination by small employers, the court relied not on the anti-discrimination act that exempted them, but on "thirty-four statutes, one executive order, and one constitutional amendment." In Utah, there is no such basis for us to find a public policy against age discrimination in employment. We have found no cases from other jurisdictions recognizing a public policy against age discrimination by small employers in a statute such as our UADA which expressly exempts small employers.

¶ 15 In *Jennings,* the California court offered an explanation of the FEHA small employer exception. They suggested that the legislature made the exception in the FEHA because the framers

> "believe[d] that discrimination on a small scale would prove exceedingly difficult to detect and police.... [I]t was believed that an employment situation in which there were less than five employees might involve a close personal relationship between employer and employees and that fair employment laws should not apply where such a relationship existed. Finally, the framers were interested primarily in attacking protracted large-scale discrimination by important employers and strong unions. Their aim was not so much to

redress each discrete instance of individual discrimination as to eliminate the egregious and continued discriminatory practices of economically powerful organizations. Thus, they could afford to exempt the small employer."

*Jennings*, 32 Cal.Rptr.2d 275, 876 P.2d at 1082 (quoting Tobriner, *California FEPC (1965)*, 16 Hastings L.J. 333, 342).

¶ 16 Several federal courts have expressed the same reasons for the small employers exemption found in certain federal anti-discrimination statutes. *See e.g., Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314 (2d Cir.1995) (legislative history indicates that "the protection of intimate and personal relations existing in small business" was reason for Title VII's small employer exemption); *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587 (9th Cir.1993) ("Congress did not want to burden small entities with the costs associated with litigating discrimination claims.").

¶ 17 There is an additional reason why we should not create a tort action against small employers. Under the UADA, a covered employee alleging age discrimination must assert his claim within 180 days of the alleged discrimination. Utah Code Ann. § 34–35–7.1(1)(c) (1994). The charge is filed at the UADD and is handled administratively. Emphasis in the administrative process is placed on conciliation and voluntary resolution. The UADA mandates that the administrative agency "attempt a settlement between the parties by conference, conciliation, or persuasion." Utah Code Ann. § 34–35–7.1(3)(a). If the claimant is successful, the relief provided includes reinstatement, back pay and benefits, and attorney fees, but no compensatory or punitive damages may be awarded. Utah Code Ann. § 34–35–7.1(9). This is all done without charge by the administrative agency. In contrast to that simplified procedure, if a small employer were subjected to a tort action in the courts, he would have to hire his own attorney to defend the action against him, and damages could be awarded against him. The action presumably could be brought within four years, not limited by the 180–day limitation in the UADA, and a jury trial might be demanded. The dissent would subject the small employers of this state to those burdens. As stated by the *Jennings* court: "It would be unreasonable to expect employers who are expressly exempted from the FEHA ban on age discrimination to nonetheless realize that they must comply with the law from which they are exempted under pain of possible tort liability. We do not ascribe such a purpose to the Legislature." 32 Cal. Rptr.2d 275, 876 P.2d at 1083. To that sound expression, we add that we would be no more justified in creating a tort action to lie against small employers than we would be to create a tort action against religious organizations or associations, which are also expressly exempted from the provisions of the UADA. The dissent charges that our decision opens the door for small employers in Utah to discriminate not only on the basis of age, but on the basis of sex, race, religion, and disability. Suffice it to here say that sex, race, religion, and disability may present different considerations and a public policy against discrimination on those grounds might conceivably be found in other statutes of this state. That question is not before us and we express no opinion on that subject.

¶ 18 Lastly, Burton contends that denying him a tort remedy against his employer violates article I, section 11 of the Utah Constitution, which provides in part, "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law...." Burton cites no authority that would require us to create a remedy for him, and we know of no case law that would require this court to do so under that constitutional provision. To the contrary, nearly eighty-five years ago this court held that where no right of action is given or no remedy exists under either the common law or statute, this section creates none. *Brown v. Wightman*, 47 Utah 31, 151 P. 366 (1915). Thus, there is no constitutional violation.

¶ 19 Judgment affirmed.

¶ 20 Justice ZIMMERMAN and Justice RUSSON concur in Chief Justice HOWE's opinion.

DURHAM, Associate Chief Justice, dissenting:

¶ 21 I respectfully dissent. While the present case concerns the limited issue of age discrimination by employers with fewer than fifteen employees ("small employers"), the majority's decision will apply to all kinds of employment discrimination. Specifically, by determining that Dr. Burton has no cause of action for age discrimination against his employer because the employer employs fewer than fifteen employees, the majority has opened the door to all small employers to discriminate not only on the basis of age, but also on the basis of the other categories protected by the Utah Anti–Discrimination Act ("Act"), Utah Code Ann. §§ 34A–5–101 to –108 (1997 and Supp.1999),[1] including race, sex, religion, and disability. In light of the fact that the vast majority of Utah employers qualify as small employers, we should not open this door. Instead, this court should recognize a common law cause of action for wrongful termination against employers who discriminate on the basis of age.

¶ 22 This court adopted a public policy exception to the employment-at-will doctrine in *Berube v. Fashion Ctr., Ltd.*, 771 P.2d 1033, 1042 (Utah 1989) (Durham, J., joined by Stewart, J.). There, we stated:

> [W]e recognize that a public policy exception is necessarily a threshold issue implicated in our reexamination of the scope of Utah's at-will rule, and we have therefore been willing to consider and define it. We also stress that actions for wrongful termination based on this exception must involve *substantial* and *important* public policies. To this end, we will construe public policies narrowly and will generally utilize those based on prior legislative pronouncements ... applying only those principles which are so substantial and fundamental that there can be virtually no question as to their importance for promotion of the public good.

*Id.* at 1043 (Durham, J., joined by Stewart, J.). The majority has failed to undertake the careful analysis of public policy that *Berube* demands, creating an enormous loophole which Utah employers may exploit to the detriment of many Utah employees. Prohibiting employers from discriminating on the basis of age constitutes a substantial and important public policy sufficient to support a common law cause of action.

¶ 23 In the Act, the legislature pronounced that "[i]t is a discriminatory ... employment practice ... for an employer to ... discharge [or] ... terminate any person ... otherwise qualified, because of race, color, sex, pregnancy, childbirth, or pregnancy-related conditions, age, ... religion, national origin, or handicap." Utah Code Ann. § 34–35–6(1)(a)(i). The legislature, in limiting the Act's coverage to employers with more than fifteen employees, appears to have been balancing two policies: vigorously opposing discrimination in employment practices while simultaneously protecting small business from the burdens of the statutory remedies. The legislature's decision not to extend the Act's remedies to employees of small employers in no way undermines the significance of its core policy principles. It is not in the public interest to permit discrimination in employment based on age, race, sex, religion, and disability.

¶ 24 The Act creates a substantial bureaucratic system to implement its aims. It mandates the creation of the Utah Anti–Discrimination Division (the "Division"), as well as the Anti–Discrimination Advisory Committee to that Division (the "Committee"). *See id.* §§ 34–35–3, –4.5(1). The governor is directed to appoint the members of the Committee, including *"one small business representative."* *Id.* § 34–35–4.5(1)(a)(i) (emphasis added). The Division is given broad powers, including the authority to "receive, reject, investigate, and pass upon complaints alleging discrimination in employment ... or the existence of a discriminatory or prohibited employment practice by a *person,* [or] an employer." *Id.* § 34–35–5(1)(c) (emphasis added). Significantly, the Division is not lim-

---

1. At the time the instant case was filed, the Act was codified at title 34, chapter 35 of the Utah Code. The relevant sections of the Act were not affected by the subsequent renumbering and amendments. Unless otherwise noted, all reference to the Act hereinafter are to the 1994 version.

ited to acting against "employers" in its fact finding or its passing upon discrimination complaints; rather, it is also empowered to act against "persons." *Id.* § 34–35–5(1)(c). Repeatedly, the Division is charged with the ambitious task of fighting employment discrimination by such means as advising the governor, recommending legislation, and cooperating with both public and private groups. *See id.* § 34–35–5(1)(h), (j), (k). It is even given the power to subpoena witnesses, administer oaths and compel the production of documents and papers. *See id.* § 34–35–5(3)(a)(i) to (iii). Finally, the legislature has instructed the Division to "issue publications and reports of investigations and research that will tend to *promote good will* among the various racial, religious, and ethnic groups of the state, and that will *minimize or eliminate discrimination in employment because of race, color, sex, religion, national origin, age, or handicap.*" *Id.* § 34–35–5(1)(g) (emphasis added). Clearly, the legislature believed the Act's purposes were to have broad and important implications for the welfare of Utah workers.

¶ 25 In addition to this strong statutory support for recognizing claims for wrongful termination based on age discrimination, two other policy considerations support the availability of such a cause of action. First, a significant majority—69.7%—of the Utah employer population employs fourteen or fewer employees.[2] Thus, the legislature's broad goal of eliminating employment discrimination is addressed in only a limited way by the Act, and can in fact be avoided by the majority of Utah employers. Second, the way in which a state regulates relations between employees and employers has a significant impact on the quality of life for many of its citizens, and ultimately for the society as a whole. The "workplace climate" of a state is an important part of its opportunities for economic growth and long-term development. It is an entirely appropriate arena for the operation of policy choices intended to benefit the public interest, as indeed is manifest by the legislature's choice to embody anti-discrimination principles in statute. Utah

should not be a place where workers can be fired, paid less, or otherwise treated less favorably by nearly 70% of all employers on the basis of their race, sex, religion, disability, or age.

¶ 26 The majority decision undermines Utah's publicly proclaimed desire to eliminate employment discrimination. Because there is no reason in logic, history, case law, or policy why discrimination on the basis of race, sex, religion, and disability may be distinguished from that based on age, I believe the majority's decision will apply to all categories protected in the Utah Anti–Discrimination Act and will affect all forms of invidious discrimination by small employers. It seems strange indeed that this court should declare that it is *not* a violation of public policy to discriminate against someone in employment because of race, sex, religion, disability, or age, no matter the size of the employer.

¶ 27 The issue before us has been addressed by other jurisdictions. Noteworthy is *Molesworth v. Brandon,* 341 Md. 621, 672 A.2d 608 (1996). In that case, the plaintiff, alleging sex discrimination against a small employer, also sought to bring an action based on common law wrongful termination. *Id.* at 611–12. The court was faced with a broad statute including the Maryland Legislature's intent to prohibit invidious employment discrimination and a limitation appearing to exempt small employers. *See* Md. Ann.Code art. 49B, §§ 14, 15(b) (1999). The court stated that "absent a statute expressing a clear mandate of public policy, there ordinarily is no violation of public policy by an employer's discharging an at will employee." *Molesworth,* 672 A.2d at 613 (internal quotation and citations omitted). The court then analyzed the various enforcement provisions of the statute, including one creating an agency called the Commission on Human Relations, with powers and a mandate similar to the Utah Division. *Id.* at 613. While there are differences between the Maryland statute and case law and our own, they are minor compared to the similarity of the over-

---

**2.** This number is based on data from the second quarter of 1999 and is provided by the Division

of Workforce Information and Payment Services.

all intent exhibited in both cases: the elimination of the detrimental effects of employment discrimination on the public interest. The *Molesworth* court found that the statutory scheme was not intended to exclude small employers from employment discrimination *policies,* but rather to "provide[] a clear statement of public policy sufficient to support a common law cause of action for wrongful discharge against an employer exempted by [having fewer than fifteen employees]." *Id.* at 616. The court, in analyzing the intent of the legislative scheme, found that while small businesses were excluded from the burdens imposed by the administrative mechanism, they were not excluded from the important public policy at the heart of the statute. See *id.; Kerrigan v. Magnum Entertainment, Inc.,* 804 F.Supp. 733, 735–36 (D.Md.1992); *Collins v. Rizkana,* 73 Ohio St.3d 65, 652 N.E.2d 653, 660–61 (1995); *Bennett v. Hardy,* 113 Wash.2d 912, 784 P.2d 1258, 1264–66 (1990). I would adopt the reasoning of the *Molesworth* court as I believe its holding is in keeping with the legislature's statutory scheme and with the substantial and important public policy behind that statutory scheme.

¶ 28 In conclusion, the language of *Berube* is clear: "Public policy is most obviously, but not exclusively, embodied in legislative enactments. The legislature, acting in consonance with constitutional principles and expressing the will of the people, determines that which is in the public interest and serves the public good." *Berube,* 771 P.2d at 1043. I believe that the "public good" in this case would be best served by permitting a common law cause of action for wrongful termination against employers who discriminate on the basis of age, race, sex, religion, and disability.

¶ 29 Justice STEWART concurs in Associate Chief Justice DURHAM's dissenting opinion.