444 S.E.2d 725

Gary ROBERTS and Jean Ann Roberts,
Plaintiffs Below, Appellants,

v.

Leland ADKINS and Leland Adkins,
D/B/A L. Adkins Oil, Defendants
Below, Appellees.

No. 21805.

Supreme Court of Appeals of
West Virginia.

Submitted March 8, 1994.

Decided May 23, 1994.

216

William Talbott, Webster Springs, for appellants.

Ernest V. Morton, Jr., Webster Springs, for appellees.

WORKMAN, Justice:

This case is before the Court upon the appeal of Gary Roberts and Jean Ann Roberts from the November 6, 1992, final order of the Circuit Court of Nicholas County, which denied the Appellants' motion to reconsider the circuit court's previous order granting a motion to dismiss brought by the Appellees, Leland Adkins and Leland Adkins, d/b/a L. Adkins Oil. The Appellants' sole assignment of error is that the trial court erred in ruling that an employer who fires his employee because the employee purchased in open commerce a product from his employer's competitor is not, as a matter of law, a retaliatory discharge, since such a firing neither violates public policy nor contravenes any legal right of the employee. Based on a review of the parties' briefs, arguments, and all other matters submitted before this Court, we find that a cause of action for wrongful discharge may exist pursuant to West Virginia Code § 21–5–5 (1989) based on the facts as alleged.[1] Therefore, the Appellees' motion to dismiss was improperly granted by the lower court and accordingly, we reverse and remand for further proceedings.

### I.

The Appellants were employees of Adkins Oil Company. The Appellee, Leland "Pete" Adkins, was the major stockholder of Adkins Oil and also the owner of Adkins Chevrolet. In late January 1989, the Appellants went to Adkins Chevrolet to purchase a used car for their son. The Appellants allege that they were told by Stanley Adkins, a sales representative of the dealership, that they could purchase a used Pontiac Sunbird from Adkins Chevrolet for $4,500. Later, Doug Adkins, also a sales representative of the dealership, informed Appellant Gary Roberts that the purchase price of the car was $5,600.[2]

Approximately one week later, in early February 1989, the Appellants purchased a Chevrolet Corsica from Hewitt Motors, a

---

1. The factual record in this case has not been fully developed. Accordingly, this Court's decision is not an indication of whether a wrongful discharge actually occurred in this case.

2. The Appellees' evidence revealed that Doug Adkins told Mr. Roberts that the purchase price could go as high as $5,600.

competitor of Adkins Chevrolet.[3] Approximately four days later, the Appellants allege that Appellee Pete Adkins dismissed both Appellants from their employment. According to the Appellants, Mr. Adkins indicated to them that they had been disloyal in purchasing a vehicle from a competitor. Even the Appellee admitted in answering the Appellants' interrogatories that "[t]he defendant Leland 'Pete' Adkins did comment to plaintiff Gary Roberts that plaintiffs did not give Adkins Chevrolet an opportunity to quote a price on a Corsica and that he, defendant, did not like plaintiffs making the Adkins dealership look bad." While the Appellants contend that they were fired, the Appellees contend that they voluntarily quit their employment.[4]

The Appellants instituted a wrongful discharge action, maintaining that their discharge was retaliatory, outrageous, and a violation of their rights to freely engage in competitive commercial transactions. The Appellees subsequently filed a motion to dismiss pursuant to West Virginia Rule of Civil Procedure 12(b)(6), alleging that the Appellants' complaint failed to state a cause of action. The circuit court granted the Appellees' motion at a March 30, 1992, hearing stating that,

> The long and the short of it is this: Although I don't admire the action—and I have to assume that the plaintiffs were discharged as a result of the fact that they had bought a car from Hewitt Motors instead of Adkins Chevrolet. I don't admire that.
>
> I have searched the records up one side and down the other, and the case law up one side and down the other, and I find no

statutory or constitutional safeguard against this.

> . . . .
>
> . . . I had to make a legal determination whether this action by the defendant is truth (sic) and constituted a true violation of the plaintiffs' rights, I came to the conclusion rather reluctantly that it did not.

It is this ruling which forms the basis of the present appeal.

## II.

■ The issue is whether a cause of action for wrongful discharge exists where an employer fires his employee because the employee purchased a product from the employer's competitor. The resolution of this issue necessarily depends upon whether such a firing constitutes a violation of a substantial public policy. *See Harless v. First National Bank,* 162 W.Va. 116, 246 S.E.2d 270 (1978). The Appellants argue that the following substantial public policies were violated by their termination of employment: 1) a liberty interest was infringed upon when their employer restrained their right to deal with someone other than the employer for purchases; 2) the provisions of West Virginia Code § 21-5-5, as well as West Virginia Code § 47-18-4 (1992)[5] were contravened through an employer requiring his employees to purchase merchandise sold by the employer from the employer and not a competitor of the employer; and 3) the employees' right to privacy was violated when their employer undertook such a firing, since they were effectively prohibited from purchasing goods in open commerce from their choice of businesses.[6] In contrast, the Appellees argue that no law exists in the public policy of this state to uphold a cause of action for retaliatory dis-

---

**3.** The Appellants allege that Leland Adkins' wife informed them that Hewitt Motors had a "campaign" going against Mr. Adkins' dealership which involved information that Adkins Chevrolet "couldn't deal with their own employees." The Appellants indicated that they had no knowledge of this "campaign" at the time they purchased the vehicle from Hewitt Motors.

**4.** The Appellees also allege that in 1988, Appellant Jean Roberts, after shopping at the Adkins dealership and finding the car payments too high, bought another car from a different car dealership. The Appellants suffered no employ-

ment repercussions as a result of this purchase, according to the Appellees.

**5.** West Virginia Code § 47-18-4 prohibits the establishment, maintenance or use of a monopoly.

**6.** Given this Court's decision that a cause of action for wrongful discharge may exist under West Virginia Code § 21-5-5, we find it unnecessary to address the Appellants' remaining contentions.

charge under the facts alleged by the Appellants.

▇ The seminal case in West Virginia concerning whether an employer can properly terminate an at will employee in *Harless*. *See* 162 W.Va. at 116, 246 S.E.2d at 270. In *Harless,* the plaintiff alleged that he was discharged from his employment at a bank because he brought to the attention of his superiors that the bank " 'had intentionally and illegally overcharged customers on prepayment of their installment loans and unintentionally did not make proper rebates.' " *Id.* at 118, 246 S.E.2d at 272. This Court held that

> [t]he rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy princip[le], then the employer may be liable to the employee for damages occasioned by this discharge.

*Id.* at 116, 246 S.E.2d at 271, syllabus. We concluded in *Harless* that a substantial public policy would be frustrated if an employee was terminated because of his efforts to ensure that his employer complied with the West Virginia Consumer Credit and Protection Act and was denied a cause of action for his discharge. *See id.* at 125–26, 246 S.E.2d at 275–76.

Under the principles enunciated in *Harless,* this Court has subsequently recognized numerous causes of action for the wrongful termination of at will employees due to a violation of a substantial public policy. *See Lilly v. Overnight Transp. Co.,* 188 W.Va. 538, 425 S.E.2d 214 (1992) (recognizing that statutes regulating brakes, making it a misdemeanor to drive an unsafe vehicle, and providing for promulgation of safety rules and regulations applicable to motor vehicles may establish cause of action for wrongful termination, where employee is discharged from employment for refusing to operate motor vehicle with unsafe brakes); *Mace v. Charleston Area Medical Ctr. Found., Inc,* 188 W.Va. 57, 422 S.E.2d 624 (1992) (upholding jury finding that employee was terminated in retaliation for exercising rights under Veterans Reemployment Rights Act, rather than for employee's refusal to submit to drug screening test); *Powell v. Wyoming Cablevision, Inc.,* 184 W.Va. 700, 403 S.E.2d 717 (1991) (upholding jury finding that employee was terminated in retaliation for filing workers' compensation claim); *Twigg v. Hercules Corp.,* 185 W.Va. 155, 406 S.E.2d 52 (1990) (holding contrary to public policy for employer to require employee drug testing unless based upon reasonable suspicion of employee's drug usage or when employee's job responsibility involves public safety or safety to others); *Collins v. Elkay Mining Co.,* 179 W.Va. 549, 371 S.E.2d 46 (1988) (recognizing cause of action for retaliatory discharge where employee was terminated for refusing to falsify safety reports concerning safety inspection at employee's plant in violation of West Virginia Mine Safety Act); *McClung v. Marion County Comm'n,* 178 W.Va. 444, 360 S.E.2d 221 (1987) (recognizing that contravention of substantial public policy exists where employer discharges employee in retaliation for employee's exercise of state constitutional rights to petition for redress of grievances and to seek access to courts by filing action for overtime wages); *Cordle v. General Hugh Mercer Corp.,* 174 W.Va. 321, 325 S.E.2d 111 (1984) (holding contrary to public policy for employer to require or request employee to submit to polygraph test or similar test as condition of employment); *Shanholtz v. Monongahela Power Co.,* 165 W.Va. 305, 270 S.E.2d 178 (1980) (recognizing cause of action where employer terminates employee because employee has filed a workers' compensation claim against employer); *Hurley v. Allied Chem. Corp.,* 164 W.Va. 268, 262 S.E.2d 757 (1980) (recognizing cause of action where employee denies employment to otherwise qualified individual on sole basis that such individual received services for mental illness, mental retardation or addiction).

In the present case, whether the Appellant can maintain a cause of action for wrongful termination depends upon whether West Virginia Code § 21–5–5 establishes a substantial public policy in this state. West Virginia Code § 21–5–5 provides, in pertinent part, that:

If any corporation, company, firm or person shall coerce or compel, or attempt to coerce or compel, an employee in its, their or his employment to purchase goods or supplies in payment of wages due him, or to become due him, *or otherwise,* from any corporation, company, firm or person, such first named corporation, company, firm or person shall be guilty of a misdemeanor.... (emphasis added).

 In ascertaining whether the above-mentioned statue creates a substantial public policy, it is helpful to examine this Court's decision in *Birthisel v. Tri–Cities Health Services Corp.,* 188 W.Va. 371, 424 S.E.2d 606 (1992). In *Birthisel,* the issue was whether a hospital's discharge of a social worker for her failure to transfer data from various records onto master treatment plans violated public policy by forcing the employee to violate ethical standards. *Id.* at 373–74, 424 S.E.2d at 608–09. In analyzing whether a violation of a substantial public policy occurred, this Court held that in order "[t]o identify the sources of public policy for purposes of determining whether a retaliatory discharge has occurred, we look to established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." *Id.* at 372, 424 S.E.2d at 607, Syl.Pt. 2. Further, this Court reasoned that

[i]n addition to considering the sources of public policy that may protect an employee from a retaliatory discharge, we note that in *Harless* we used the phrase 'substantial public policy.' This was designed to exclude claims that are based on insubstantial considerations. The term 'substantial public policy' implies that the policy principle will be clearly recognized simply because it is substantial. An employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations.

*Id.* at 377, 424 S.E.2d at 612. Based on this reasoning, we held in syllabus point 3 that "[i]nherent in the term 'substantial public policy' is the concept that the policy will

provide specific guidance to a reasonable person." *Id.* at 372, 424 S.E.2d at 607.

West Virginia Code § 21–5–5 was originally enacted to alleviate the situation in which coal companies required miners to make their purchases at the company store, owned by the coal company, either by deducting said purchases from their wages or by being paid in company script which was spendable only at the company store. By enacting this statutory provision, the legislature not only denounced the unfair practices of the coal companies, but also set forth, via the statute, a substantial public policy against such practice, which is evidenced by the legislature making such practice constitute a criminal misdemeanor.

Although the record in this case does not reflect that the employees were required to purchase goods from the Appellees in exchange for wages due or to become due the employees, West Virginia Code § 21–5–5 does not limit such coercive practices solely to mandatory purchases in exchange for wages, as reflected in the following statutory language: "[i]f any ... company ... or person shall coerce or compel, or attempt to coerce or compel, an employee in its, ... or his employment to purchase goods or supplies in payment of wages due him, or to become due him, *or otherwise....*" (emphasis added). The term "otherwise" is defined as "under other circumstances[,] ... in another manner; differently[.]" Random House Dictionary of the English Language 1372 (2d ed. unabridged 1987). Thus, it appears that the legislature also intended to eliminate and to prevent employment practices where the employee was being coerced or compelled to purchase goods under other circumstances utilized by the employer, for instance the threat of losing, or actual loss of the employee's job.

 This interpretation of West Virginia's Code § 21–5–5 is in no way intended to unlock a Pandora's box of litigation in the wrongful discharge arena. It is significant that the purpose of West Virginia Code § 21–5–5 was to eliminate the employer practices of forcing employees to purchase goods at companies owned by the employer but which had nothing to do with the employees'

employment. Similarly, in the present case, the Appellants worked at Mr. Adkins' oil company and were allegedly fired for not purchasing a car at the car dealership owned by Mr. Adkins, but which was in no way related to their employment.[7] Consequently, a cause of action for wrongful discharge may exist under West Virginia Code § 21–5–5, for the retaliatory discharge of an employee because of the employee's purchase of goods from a competitor of a separate and distinct business owned by the employer, where the employee did not work for the employer's separate and distinct business and, where the purchased goods were in no way related to or within the scope of the employment.

In the instant case, whether the Appellants were discharged in retaliation for purchasing a vehicle from the Appellees' competitor or whether the Appellants voluntarily quit is a factual determination. Clearly, however, if it is determined that the Appellees' discharged the Appellants in retaliation for purchasing a vehicle from a competitor of the Appellees' automobile dealership, where the Appellants did not work for the Appellees' automobile dealership, but rather were employed by the Appellees' oil company, then the substantial public policy set forth by the legislature in West Virginia Code § 21–5–5 is violated. Therefore, the circuit court erred in dismissing the Appellants' action.

Based on the foregoing, the decision of the Circuit Court of Nicholas County is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

7. Had the employees worked at the employer's car dealership, then the requirement that the employees utilize vehicles from that particular dealership may have been a reasonable condition of employment, for which failure to abide could result in the proper termination of the at will employees. In that type of situation, an employer having to explain to customers why the employees drive vehicles purchased from a different car dealer, may very well have a detrimental impact on the employer's business.