# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2021 Term

_____

No. 19-0407

_____

**FILED**

**April 23, 2021**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**JASON GREASER,**
**Plaintiff Below, Petitioner**

**V.**

**GARY HINKLE AND DETTINBURN TRANSPORT, INC.,**
**Defendants Below, Respondents**

_____

Appeal from the Circuit Court of Pendleton County
The Honorable H. Charles Carl, III, Judge
Civil Action No. 17-C-9

**AFFIRMED**

_____

Submitted: March 24, 2021
Filed: April 23, 2021

Harley O. Staggers, Jr.
Staggers & Staggers Law Firm
Keyser, West Virginia

Lia DiTrapano Fairless
DiTrapano Law Firm, P.C.
Charleston, West Virginia

L. Tom Price
Tom Price Law, PLLC
Charleston, West Virginia
Attorneys for Petitioner

Julie A. Moore
Steptoe & Johnson PLLC
Morgantown, West Virginia

Jerry D. Moore
Jared T. Moore
The Moore Law Firm, PLLC
Franklin, West Virginia
Attorneys for Respondents

**Allan N. Karlin**
**Allan N. Karlin & Associates, PLLC**
**Morgantown, West Virginia**

**Lonnie C. Simmons**
**DiPiero Simmons McGinley & Bastress,**
**PLLC**
**Charleston, West Virginia**
**Attorneys for Amici Curiae,**
**West Virginia Education Association,**
**American Federation of Teachers of West**
**Virginia, West Virginia American**
**Federation of Labor and Congress of**
**Industrial Organizations, West Virginia**
**Employment Lawyers Association, and West**
**Virginia Association for Justice**

**CHIEF JUSTICE JENKINS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."  Syllabus point 3, *Aetna Casualty & Surety Company v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

2.      "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove."  Syllabus point 4, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

3.      "A circuit court's entry of summary judgment is reviewed *de novo*."  Syllabus point 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

4.      "The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge."  Syllabus, *Harless v. First National Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978).

i

5. "Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus point 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

**Jenkins, Chief Justice:**

Petitioner Jason Greaser ("Mr. Greaser") appeals from an order entered March 26, 2019, by the Circuit Court of Pendleton County. In that order, the circuit court determined that the civil provisions of the West Virginia Wage Payment and Collection Act ("WPCA" or "Wage Payment Collection Act"), specifically West Virginia Code section 21-5-3 (eff. 2015),[1] have not been recognized by this Court as a substantial public policy exception to the at will employment doctrine. Therefore, the circuit court entered partial summary judgment in favor of Respondents Gary Hinkle and Dettinburn Transport, Inc. (collectively "Respondents") on Mr. Greaser's retaliatory discharge claim. On appeal, Mr. Greaser urges this Court to recognize the civil provisions of the WPCA as substantial public policy sufficient to support a claim for retaliatory discharge, and, further, to conclude that he was wrongfully terminated in retaliation for pursuing a claim under West Virginia Code section 21-5-3. Having considered the briefs submitted on appeal, the appendix record, the parties' oral arguments, and the applicable legal authority, we find no error. Accordingly, for the reasons set forth below, we affirm the rulings made by the circuit court.[2]

---

[1] West Virginia Code section 21-5-3 was amended by the Legislature in 2018, but no changes were made that affect this Opinion.

[2] We wish to acknowledge the appearance of Amici Curiae for the West Virginia Education Association, the American Federation of Teachers of West Virginia, the West Virginia American Federation of Labor and Congress of Industrial Organizations, the West Virginia Employment Lawyers Association, and the West Virginia Association for Justice, and to express our appreciation for their brief in support of the position

# I.

## FACTUAL AND PROCEDURAL HISTORY

Dettinburn Transport, Inc. ("Dettinburn") employed Mr. Greaser, an at will employee, as a truck driver. In December of 2016, mechanics at Dettinburn's shop in Petersburg, West Virginia, began noticing that several truck tires were missing from the tire bays. At the same time, Dettinburn's president and owner, Gary Hinkle ("Mr. Hinkle"), and Mr. Hinkle's son, Travis Hinkle, started hearing from members in the community that Mr. Greaser was "shopping around" tires for sale in the local area. After hearing this news, Mr. Hinkle contacted the West Virginia State Police to report that multiple tires were missing from the shop and conveyed the information regarding Mr. Greaser's potential involvement. Thereafter, the West Virginia State Police dispatched Corporal Eric Vaubel ("Corporal Vaubel") to investigate.

During his investigation, Corporal Vaubel interviewed several individuals, which ultimately led him to locate the missing tires. The tires were in the possession of a person who had unknowingly purchased the stolen property from Mr. Greaser for $200 per tire for a grand total of $1,200. Corporal Vaubel verified that the recovered tires were Dettinburn's tires by matching their unique tread pattern and serial numbers to recent

---

espoused by Mr. Greaser herein. We have considered their arguments and brief in our decision of this case.

2

purchases made by Dettinburn. After the identity of the tires was verified, the tires were returned to Dettinburn.

Based upon the findings of the investigation, Corporal Vaubel arrested Mr. Greaser for the felony offense of grand larceny for the tire theft. Then, on December 29, 2016, soon after learning about Mr. Greaser's theft of the tires and his subsequent arrest for grand larceny, Mr. Hinkle terminated Mr. Greaser's employment with Dettinburn. Following his arrest and termination, Mr. Greaser was indicted by a grand jury in Grant County, West Virginia, for the felony offense of grand larceny.[3]

Several months after Mr. Greaser's termination, Mr. Hinkle learned, for the first time, that Mr. Greaser intended to file a lawsuit against Dettinburn under the Wage Payment Collection Act, more specifically, West Virginia Code section 21-5-3(a), alleging that Dettinburn owed him unpaid wages. Mr. Hinkle first learned of Mr. Greaser's intentions in February or March of 2017 when Mr. Greaser's attorneys contacted Dettinburn's attorneys. Mr. Greaser's attorneys stated that they had been retained to represent Mr. Greaser and that they would be filing a WPCA claim on Mr. Greaser's behalf.

---

[3] By Order dated May 28, 2019, the Circuit Court of Grant County ruled that all of the evidence collected by Corporal Vaubel regarding Mr. Greaser's theft of Dettinburn's tires would be suppressed at trial as "unreliable and uncorroborated" because the State had not retained custody over the tires, but rather, returned the tires to Dettinburn. As such, Mr. Greaser ultimately was not prosecuted for grand larceny.

3

On May 1, 2017, Mr. Greaser filed the instant lawsuit against Dettinburn, Mr. Hinkle, and two other defendants who are not at issue in this appeal.[4] In his complaint, Mr. Greaser advanced the following causes of action: (1) WPCA claim under West Virginia Code section 21-5-3(a) contending that Dettinburn failed to pay him all of his wages throughout the course of his employment; (2) breach of contract claim; (3) tort of outrage claim; and (4) retaliatory discharge claim under *Harless v. First National Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978), alleging that he was terminated not for stealing tires, but rather for enforcing substantial public policy of the State. Throughout discovery, Mr. Greaser clarified his *Harless* claim, contending that he was falsely accused of stealing tires from Dettinburn and was pretextually terminated for the theft because he intended to enforce the WPCA against Dettinburn by filing a lawsuit. More specifically, Mr. Greaser argued that Mr. Hinkle knew about his intention to file a WPCA claim because a fellow truck driver at Dettinburn filed a similar lawsuit against the company in August of 2016.

On January 8, 2019, Respondents moved for summary judgment and made the following arguments regarding Mr. Greaser's retaliatory discharge claim: (1) the civil

---

[4] Originally, Mr. Greaser brought the case against Dettinburn; Mr. Hinkle; Hinkle Trucking, Inc.; and Travis Hinkle. Subsequently, Hinkle Trucking, Inc., and Travis Hinkle were dismissed with prejudice from the action. The circuit court found that, "by [Mr. Greaser's] own admission, Dettinburn Transport, Inc., not Hinkle Trucking, Inc.[,] was his employer." Further, Mr. Greaser's attorneys conceded that "Travis Hinkle was not an owner, officer, or agent of Dettinburn Transport, Inc."

provisions of the WPCA upon which Mr. Greaser's claims are based are not, and have not, been recognized as substantial public policy sufficient to sustain a *Harless* claim, and (2) even if such provisions could sustain a *Harless* claim, summary judgment is proper because the undisputed record evidence demonstrates that Mr. Hinkle had no knowledge that Mr. Greaser would file a WPCA claim at the time of Mr. Greaser's termination.

After a hearing on the motion for summary judgment, the circuit court entered an order on March 29, 2019, and granted partial summary judgment in favor of Respondents as to Mr. Greaser's claims for the tort of outrage[5] and retaliatory discharge. In its order, the circuit court stated that the civil provisions of the WPCA, upon which Mr. Greaser premised his retaliatory discharge claim, have not been recognized as a source of substantial public policy for purposes of *Harless*. Furthermore, the circuit court noted that when this Court considered whether the WPCA could sustain a *Harless* claim in the past, it carefully limited its holding—recognizing only the criminal provisions of the WPCA found at West Virginia Code section 21-5-5 (eff. 1891) as espousing public policy.[6] *See Roberts v. Adkins*, 191 W. Va. 215, 444 S.E.2d 725 (1994). This appeal followed.

---

[5] Mr. Greaser does not appeal the circuit court's order as it pertains to the tort of outrage claim.

[6] The circuit court denied the Respondents' motion for summary judgment as to the WPCA claim and the breach of contract claim. Nevertheless, the circuit court stated in its order that it found "no just reason for delay and upon an express direction for the entry of judgment, the Court's rulings granting [Respondents'] Motion for Summary Judgment as to Counts III and IV shall be an immediately appealable, final judgment pursuant to Rule 54(b) of the West Virginia Rules of Civil Procedure."

5

**STANDARD OF REVIEW**

The instant proceeding is before this Court on appeal from the circuit court's order granting partial summary judgment to Respondents. "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N.Y.*, 148 W. Va. 160, 133 S.E.2d 770 (1963). As such,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 4, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Finally, "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter*, 192 W. Va. 189, 451 S.E.2d 755. Mindful of these principles, we consider the parties' arguments.

**III.**

**DISCUSSION**

In the case *sub judice*, Mr. Greaser asserts that the circuit court erred by granting partial summary judgment in favor of Respondents because the court erroneously determined that there was no substantial public policy on which he can base his retaliatory discharge claim. More specifically, Mr. Greaser argues that there is substantial public

policy establishing an employee's right to enforce the protections afforded to employees by the WPCA. To support his claim, Mr. Greaser contends that the circuit court's order awarding partial summary judgment to Respondents should be reversed because the circuit court erred by not identifying "the sources of public policy for purposes of determining whether a retaliatory discharge has occurred" such as "established precepts in our constitutions, legislative enactments, legislatively approved regulations, and judicial opinions." Mr. Greaser also alleges that the circuit court erred in granting summary judgment on his retaliatory discharge claim because his termination violated substantial public policy espoused by Article III, Section 17 of the West Virginia Constitution.[7]

In response, the Respondents urge this Court to affirm the circuit court's ruling insofar as the circuit court correctly applied the law to find that the civil provisions of the WPCA have not been recognized by this Court as substantial public policy upon which a *Harless* claim may be premised, and that, in opposing the motion for summary judgment, Mr. Greaser advanced no legal support for the notion that said provisions do constitute substantial public policy for purposes of a *Harless* analysis.

---

[7] After a review of the appendix, the record demonstrates that, below, Mr. Greaser maintained that his *Harless* claim was premised solely upon alleged public policy espoused by the WPCA—not the West Virginia Constitution. Therefore, we decline to address this assignment of error. "Our law is clear in holding that, as a general rule, we will not pass upon an issue raised for the first time on appeal." *Mayhew v. Mayhew*, 205 W. Va. 490, 506, 519 S.E.2d 188, 204 (1999).

As this Court has stated before, in general, in the absence of express contractual agreements to the contrary, employers and employees in West Virginia are governed by the at will employment doctrine. *See, e.g.*, *Newton v. Morgantown Machine & Hydraulics of W. Va., Inc.*, 242 W. Va. 650, 838 S.E.2d 734 (2019). Under this doctrine, "[w]hen a contract of employment is of indefinite duration it may be terminated at any time by either party to the contract." Syl. pt. 2, *Wright v. Standard Ultramarine & Color Co.*, 141 W. Va. 368, 90 S.E.2d 459 (1955). "An at will employee can be discharged at any time, with or without cause. The converse also is true—an employee can quit his or her job at any time, with or without reason. This is the general law regarding employment in West Virginia." *Newton* at 654, 838 S.E.2d at 738.

However, over the years, we have restrained the employer's absolute right to fire employees. In the Syllabus of *Harless v. First National Bank*, 162 W. Va. 116, 246 S.E.2d 270, this Court held:

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

"To identify the sources of public policy for purposes of determining whether a retaliatory discharge has occurred, we look to established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." Syl. pt. 2, *Birthisel v. Tri-Cities Health Servs. Corp.*, 188 W. Va. 371, 424 S.E.2d 606 (1992).

8

In *Roberts v. Adkins*, 191 W. Va. 215, 444 S.E.2d 725 (1994), this Court was presented with an opportunity to declare the WPCA, in its entirety, as substantial public policy for purposes of supporting a *Harless* claim. However, the Court declined to do so. Rather, we limited our decision and expressly held that *only* the criminal provisions of the WPCA, located at West Virginia Code section 21-5-5, would be deemed substantial public policy—not its civil provisions at West Virginia Code section 21-5-3. In *Adkins*, this Court declared that "[t]his interpretation of West Virginia's Code § 21-5-5 is in no way intended to unlock a Pandora's box of litigation in the wrongful discharge area." *Adkins* at 219, 444 S.E.2d at 729.

> West Virginia Code section 21-5-3(a) provides that
>
> [e]very person, firm or corporation doing business in this state, except railroad companies as provided in section one of this article, shall settle with its employees at least twice every month and with no more than nineteen days between settlements, unless otherwise provided by special agreement, and pay them the wages due, less authorized deductions and authorized wage assignments, for their work or services.

Mr. Greaser contends that permitting an employer to discharge an employee in retaliation for the employee's assertion of rights under West Virginia Code section 21-5-3(a) contravenes the public policy embodied in the WPCA.

After careful review of the appendix record before this Court, we conclude that the circuit court's order granting summary judgment on the retaliatory discharge claim

9

was correct.  This Court held in Syllabus point 2 of *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995) that

> [s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Moreover,

> [w]hile the underlying facts and all inferences are viewed in the light most favorable to the nonmoving party, the nonmoving party must nonetheless offer some concrete evidence from which a reasonable . . . [finder of fact] could return a verdict in . . . [its] favor or other significant probative evidence tending to support the complaint.

*Id.* at 59-60, 459 S.E.2d at 336-37 (internal citations omitted).  Additionally, this Court repeatedly has held that it has the authority to "affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record regardless of the ground, reason or theory assigned by the lower court as the basis of its judgment."  Syl. pt. 3, in part, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965).

Because we conclude that this case should be affirmed for other reasons, this Court declines to address at this time, the issue of whether a cause of action for retaliatory discharge in contravention of public policy may exist under West Virginia Code section 21-5-3, where an employee is discharged from employment in retaliation for filing claims under the WPCA.  However, there is no dispute that this Court has never recognized the civil provisions of the WPCA as substantial public policy sufficient to sustain a retaliatory

10

discharge claim. While this Court has had the opportunity to do so in the past, *i.e. Robert v. Adkins*, we carefully chose not to open Pandora's box, and rather, made the conscious decision to limit extending the *Harless* doctrine to *only* the WPCA's criminal provisions. As the circuit court stated below, "[i]t is axiomatic that a *Harless*-style claim cannot lie absent a substantial West Virginia public policy allegedly violated in terminating the employee."

Instead of delving into an analysis of whether substantial public policy exists to sustain a *Harless* claim, we conclude that the undisputed facts of this case support the circuit court's order granting partial summary judgment. Here, Mr. Greaser maintains that Mr. Hinkle had knowledge, prior to Mr. Greaser's termination, that he intended to file a lawsuit based on the WPCA. Specifically, during oral argument, Mr. Greaser's counsel supported this argument by referencing a discussion that allegedly occurred at the Dettinburn shop. According to Mr. Greaser's counsel, Mr. Hinkle learned of the potential lawsuit when a group of employees discussed wages and the possibility of meeting with an attorney. However, upon closer examination of the appendix, the undisputed record evidence demonstrates that Mr. Greaser's superiors did not have knowledge of his potential lawsuit prior to his termination.

When asked about who was present at the meeting, Mr. Greaser stated in his deposition that he did not "even remember who all was there." Furthermore, when

11

questioned about his conversations with Mr. Hinkle and his superiors, Mr. Greaser disclosed that he spoke to them very rarely, if at all.

Counsel: Did you ever talk to Gary [Hinkle]?

Mr. Greaser: One time.

Counsel: Do you know when that was?

Mr. Greaser: Nope, not –

Counsel: Sorry.

Mr. Greaser: No.

Counsel: Did it relate to your employment or your pay?

Mr. Greaser: Huh-uh.

Counsel: Just a casual hello?

Mr. Greaser: No, I loaned a trainer for him one time.

Counsel: Did you ever have any problems with Gary [Hinkle]?

Mr. Greaser: That was the only time I ever talked to him.

. . .

Counsel: Okay.  Did you ever complain to Gary [Hinkle] or Kevin that you were not being paid the proper amount?

Mr. Greaser: The only person I dealt with most of the time was Terry.  I never really even talked to Kevin but when he hired me or once, I think.

Counsel: Okay.
Mr. Greaser: Everything I did was through Terry.

Counsel: Okay. And just to confirm, you did not talk to Kevin, did not talk to Gary [Hinkle], did not talk to Cynthia about – strike that. Is it fair to say that you never complained to Kevin, Cynthia, or Gary [Hinkle] about your rate of pay?

Mr. Greaser: Nope, because everything I was supposed to do – when I was talking when I was hired, they said everything was going through Terry. So he did – he took care of everything on my end of it, what trucks to drive, what loads to go to, what to do.

Therefore, although Mr. Greaser's entire retaliatory discharge claim is premised upon the allegation that Respondents knew about his potential lawsuit and discharged him because of it, Mr. Greaser admitted that he did not know if Mr. Hinkle or his other superiors had prior knowledge of his potential lawsuit.

Counsel: Are you aware if Kevin knew you were going to file a lawsuit before you were terminated?

Mr. Greaser: I can't answer that. I don't know.

Counsel: Do you have any reason to believe that Kevin knew you were going to file a lawsuit before you were terminated?

Mr. Greaser: Uh, I can't answer that. I don't know.

Counsel: Do you have any reason to believe that Gary [Hinkle] or Travis knew that you were going to file a lawsuit before you were terminated?

Mr. Greaser: I – I can't answer that. I don't know.

13

When a plaintiff advances a claim for retaliatory discharge, he or she must ultimately come forth with evidence demonstrating that his or her employer was improperly motivated by conduct related to the substantial public policy at issue in making the decision to terminate the plaintiff's employment. *See, e.g.*, *Feliciano v. 7-Eleven, Inc.*, 210 W. Va. 740, 750, 599 S.E.2d 713, 723 (2001) (noting that the plaintiff must prove his termination was motivated by conduct related to the public policy at issue). Upon review of this case, we conclude that the circuit court did not err in granting partial summary judgment in favor of Respondents. The appendix record demonstrates that Mr. Hinkle did not have knowledge of the potential lawsuit prior to Mr. Greaser's termination, and therefore, Mr. Hinkle could not have been motivated to terminate Mr. Greaser because of a potential WPCA lawsuit. The undisputed evidence established that Mr. Hinkle only became aware that Mr. Greaser intended to file a WPCA lawsuit several months after his termination, when Mr. Greaser's counsel contacted Dettinburn's counsel on either February 27, 2017, or March 14, 2017—two or three months after Mr. Greaser's termination. Therefore, we find no error in the circuit court's order granting partial summary judgment.

## IV.

## CONCLUSION

For the reasons set forth above, we find no error and therefore affirm the circuit court's order granting partial summary judgment in favor of Respondents.

Affirmed.